UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

| | |
|---|---|
| ROBERT S. BRUNER,<br>Plaintiff,<br><br>v.<br><br>PAM BONDI, et al.,<br><br>Defendants. | Civil Action No. 6: 25-141-KKC<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

This matter is before the Court upon the motion of the defendants to dismiss the Complaint filed by plaintiff Robert Bruner. [R. 20] The parties have filed their respective responses and replies, [R. 21]; [R. 23], rendering the matter ripe for decision.

**I.**

In his complaint, Bruner indicates that in March 2023 he began temporary service as the acting Associate Warden for Operations ("AW(O)") at the Federal Correctional Institution at Manchester. *See* [R. 1-1 at 2] Bruner applied for the AW(O) position, vacancy announcement MSS-2023-0005, on a permanent basis. He alleges that he "was on the Best Qualified list for the vacancy[.]" However, on September 21, 2023, he was not selected for the position. Instead, Michael Duff was chosen to serve as the new AW(O). *See id*. Because Duff was not scheduled to begin in his new role until April 2024, Bruner continued to serve as the acting AW(O) until that time. *See id*. at 2.

At some point thereafter, the incumbent Associate Warden for Programs ("AW(P)") retired, creating a vacancy for that position. Bruner implies that he applied for the AW(P) position, vacancy announcement MSS-2024-0002. *See* [R. 1-1 at 2] However, in April 2024, Duff was placed in the AW(P) position. At the same time, Joshua Hensley was selected for the AW(O) position instead of Bruner. *See id*. Bruner states that Director Lothrop made both hiring decisions based upon the

recommendation of Regional Director Gomez without reviewing the candidates' resumes, qualifications, or experience. Bruner contends that he was objectively "more qualified" for each of the positions than the candidates chosen. *See* [R. 1-1 at 3]

In an amendment to his administrative complaint to the BOP, Bruner separately alleged that in November 2023, the defendants "endorsed a BHS Newsletter addressed to all agency employees, including the aggrieved [which] included a photograph of a hand gesture which the Agency previously perceived as 'racially motivated[.]'". [R. 1-2 at 3] Bruner also asserts that he was subjected to a hostile work environment when at some point in time "agency counsel contacted the Plaintiff's supervisor interfering with the selection process." [R. 1-1 at 3]

Bruner contends that Bureau of Prisons' officials engaged in employment discrimination, failure to comply with the requirements of merit selection rules, and retaliation. [R. 1 at 3-4] He seeks damages and ancillary relief. *See id.* at 8.

**II.**

The Court first addresses three matters raised in Bruner's response to the motion to dismiss. *See* [R. 21] First, Bruner asks the Court to deny the motion to dismiss because the defendants did not file a response indicating whether they would interpose objections to the sufficiency of process, as the Court had requested. *See* [R. 21 at 3-4, referencing [R. 17]] Defendants' counsel indicates that she did not receive the Court's Order as the result of an apparent administrative error. [R. 23 at 6] The failure to respond, while regrettable, is not a sufficient ground upon which to deny the pending motion to dismiss.

Second, Bruner requests that the Court to afford him to leave to amend his complaint if it determines that the motion to dismiss should be granted. [R. 21 at 4] But a plaintiff's request to amend his complaint in an unspecified manner, conditioned upon the Court's grant of a dispositive motion at some point in the future, is neither a proper means to seek amendment nor a valid ground upon which

to deny an otherwise meritorious motion to dismiss. *See Rosenberg v. Gould*, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Price v. Hodges Motor Co., LLC*, No. 3:19-CV-34-J-34-PDB, 2019 WL 13273857, at *1 (M.D. Fla. Feb. 15, 2019) (holding that "a request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion.") (*citing* Fed. R. Civ. P. 7(b)). Further, a party seeking an amendment must attach a copy of the amended complaint to his motion. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). Bruner has not done so here.

While a dispositive motion is pending, if a plaintiff decides that amendment is necessary to address deficiencies in his pleading he may take that step immediately whether as a matter of right under Rule 15(a)(1) or by seeking leave of Court under Rule 15(a)(2). If he waits until after the Court grants the motion to dismiss, he may still be able to amend his complaint, but only by meeting the more demanding standards of Rule 59 or 60. *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014). The Court will therefore deny this informal request as well.

Third, the defendants' motion seeks dismissal of Bruner's claims asserted under 5 U.S.C. § 2301 and 5 C.F.R. § 335.103(b), a statute and regulation codifying certain merit systems principles. *See* [R. 20 at 7-9] Bruner responds that he "does not allege that 5 C.F.R. § 335.103 creates an independent cause of action" but that he referenced the rules in his complaint only to "provide relevant factual context supporting Plaintiff's Title VII claims…" [R. 21 at 4] Bruner's complaint belies that assertion: he cites the merit systems rules as both an independent claim and as a separate basis for this Court's jurisdiction. *See* [R. 1 at 3, 4] Regardless, because Bruner now concedes that merit selection rules do not provide an independent cause of action, the Court will dismiss any such claims.

**III.**

The defendants move to dismiss Bruner's complaint, contending that it does not state facts to viably establish a claim of employment discrimination, a hostile work environment, or retaliation. *See* [R. 20 at 1] The Court addresses these contentions in turn.

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted. At a minimum, a complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Peterson v. Johnson*, 87 F.4th 833, 836 (6th Cir. 2023). When deciding whether the complaint meets that standard, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Jackson v. City of Cleveland*, 64 F.4th 736, 743 (6th Cir. 2023). However, the Court "need not give legal conclusions and unwarranted factual inferences a presumption of truth." *Heyward v. Cooper*, 88 F.4th 648, 653 (6th Cir. 2023). The Court also need not accept a legal conclusion couched as a factual allegation. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). And mere recitations of the elements of a cause of action are plainly insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the end, if the facts as alleged do not state a plausible claim for relief, the complaint should be dismissed. *Steeb v. Ehart*, 165 F.4th 536, 540 (6th Cir. 2026) (*citing Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015)).

The parties offer competing arguments regarding how these rules apply when evaluating an employment discrimination complaint. The familiar burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does not govern when deciding a motion to dismiss under Rule 12(b)(6). *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Instead, the established pleading standards described in *Twombly* and *Iqbal* control. Thus, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Plausibility sits somewhere between possibility and

probability. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). The plaintiff must therefore "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

That means that a plaintiff alleging employment discrimination "need only allege sufficient facts to support a plausible inference that the [defendant] 'discriminate[d] against [him] with respect to [his] compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, sex, or national origin.'" *Mustafa v. Ford Motor Co.*, No. 24-1763, 2025 WL 2720988, at *2 (6th Cir. Sept. 24, 2025) (*quoting Keys*, 684 F.3d at 610) (in turn quoting 42 U.S.C. § 2000e-2(a)(l))). At a minimum, the complaint must offer some factual content "regarding the other employees or their differing treatment." *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (affirming age discrimination complaint which contained no facts "regarding the ages or positions of the younger, similarly-situated employees, or any example of how those employees were treated differently.").

The Sixth Circuit holds that there are "multiple avenues" for a plaintiff "to make the requisite showing" in his complaint. *Doe v. Blanche*, No. 25-1442, 2026 WL 1211480, at *6 (6th Cir. May 4, 2026). For example, the complaint "could allege details about a 'specific event' in which she was 'treated differently' from colleagues outside of her protected class." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 944 (6th Cir. 2024) (*quoting Keys*, 684 F.3d at 610). Or a complaint can "detail the events leading up to [the plaintiff's] termination, provide relevant dates, and include the ages and nationalities of at least some of the relevant persons involved with the termination." *Swierkiewicz*, 534 U.S. at 514 (cleaned up).

**IV.**

Applying these standards, the defendants contend that Bruner's complaint does not include allegations necessary to state a viable claim of race-based discrimination at the pleading stage. [R. 20 at 3-5] Even affording Bruner's *pro se* complaint a liberal construction, the Court must agree. In his

complaint Bruner indicates that he is white and Caucasian and asserts that the defendants discriminated against him based upon his race and color. [R. 1 at 3-4] However, he does not allege any facts indicating that he did not receive the promotions he sought for race-based reasons. For example he does not allege that those who were hired, Michael Duff or Joshua Hensley, were part of an unprotected class or were of a different race or color from himself. Bruner also does not point to any other events or circumstances of his employment indicative of discrimination which either played a role in the hiring process or were generally present. Indeed, his only mention of any conduct with a racial component is that at some unspecified point in time he received a "BHS Newsletter" that was "addressed to all agency employees" that "included a photograph of a hand gesture which the agency previously perceived as 'racially motivated.'" [R. 1-2 at 3] Bruner provides no other details regarding the photograph, its racial component, whether that racial component would be considered antagonistic to him or others or his race or color, or what role its wide dissemination to agency employees would have played in the agency's hiring process.

When deciding the sufficiency of Bruner's complaint, the Court assumes that his non-selection for the posted positions constitutes adverse action implicating Title VII protections. But his complaint fails to connect that failure to promote to discrimination based upon his color or race. Unlike numerous other cases where allegations have been found sufficient, Bruner's complaint does not allege *any* facts indicating that he was not chosen for the associate warden positions because he is white or Caucasian, or that he was treated less favorably than non-white or non-Caucasian candidates.

Compare Bruner's allegations to, for instance, the plaintiff in *Keys* who "alleged 'several specific events' in which she received different treatment than did her white colleagues, identified supervisors by name or title, and claimed she underwent several adverse employment actions despite satisfactory performance. *Mustafa*, 2025 WL 2720988, at *4. Similarly, in *Mustafa* the plaintiff's complaint detailed several specific events "where, in the lead-up to his termination, he was allegedly

treated less favorably than similarly situated, non-Middle Eastern, non-Muslim colleagues." *Id*. *See also Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 498 (6th Cir. 2016) (reversing dismissal of sex discrimination claim where female plaintiff expressly alleged "that a male was promoted in her place[.]"). Conversely, in *Han v. University of Dayton*, 541 F. App'x 622 (6th Cir. 2013), the Sixth Circuit affirmed the dismissal of a discrimination claim because the complaint "contained no details of how others outside of the plaintiff's protected class were treated differently." *Id*. at 626-27. Similarly, in *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013), the Sixth Circuit affirmed the dismissal of a complaint which failed to "nam[e] any similarly situated individuals or provid[e] facts demonstrating that persons of different national origins received more favorable treatment." *Id*. at 506. That complaint was properly dismissed because "[t]he plaintiffs merely speculated that such comparators existed, without any factual detail regarding the comparators' identity or circumstances, or how those circumstances were comparable." *Mustafa*, 2025 WL 2720988, at *5. Bruner's complaint lacks any such details, and simply fails to raise his claim of discrimination above the level of speculation, warranting dismissal.

Bruner's claim that he was subjected to a hostile work environment is similarly deficient. The Sixth Circuit has explained that "[a] hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 377 (6th Cir. 2026) (cleaned up, *quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Here, Bruner alleges only that on a single occasion "agency counsel contacted the Plaintiff's supervisor interfering with the selection process." [R. 1-1 at 3] But he does not explain when the communication occurred, what was said, whether it related to his job applications, or offer facts even suggesting that it caused a hostile work environment. The Court, drawing upon its "judicial experience and common sense" is unable to draw from this decidedly limited and nonspecific

allegation the reasonable inference that Bruner was subjected to a hostile work environment where the conduct to which Bruner points was neither severe nor pervasive.

Bruner's retaliation claim also fails to meet minimum pleading standards. To adequately plead a retaliation claim, the plaintiff must allege facts sufficient to plausibly support the inference that he engaged in an activity protected under Title VII; that his employer took adverse employment action against him; and "that there was a causal connection between [his] protected activity and the adverse employment action[.]" *Thomas v. United States Postal Serv.*, No. 24-2101, 2025 WL 3845300, at *4 (6th Cir. Dec. 9, 2025) (*citing Prida v. Option Care Enters., Inc.*, No. 23-3936, 2025 WL 460206, at *6 (6th Cir. Feb. 11, 2025)); *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018).

Bruner states without elucidation that "[i]t is undisputed that the Plaintiff engaged in a prior protected EEO activity, and further, the agency aware of the protected EEO activity … Subsequently, the Plaintiff was subjected to adverse treatment by the agency through non-selections." [R. 1-1 at 2] However, he does not state whether he engaged in the protected activity before one or both of the dates when the hiring decisions at issue were made; he does not state that the persons responsible for promoting others instead of him were actually aware of it; and he does not clearly allege that the decision not to hire him was in response to his protected activity. A complaint that fails to provide facts from which the Court can draw a connection between protected activity and adverse action is insufficiently pleaded. *Cf. White v. Coventry Health & Life Ins. Co.*, 680 F. App'x 410, 414 (6th Cir. 2017); *Desormeaux v. Kalitta Air, LLC*, No. 25-1772, 2026 WL 1949105, at *8 (6th Cir. July 6, 2026) (affirming dismissal of Title VII retaliation claim for failure to allege that protected activity was but-for cause of adverse employment action); *Meilus v. Rest. Opportunities Ctr. United, Inc.*, No. 21-02554, 2021 WL 4868557, at *7 (S.D.N.Y. Oct. 15, 2021) ("Binding decisions have held on numerous occasions that in order to adequately plead causation in a retaliation claim under Title VII, a plaintiff's minimal burden is to plausibly allege but-for causation."). Given those omissions, his allegations do

not provide a factual basis to infer a causal relationship between the protected activity and the decisions not to promote him. *Cf. Thomas v. United States Postal Serv.*, No. 24-2101, 2025 WL 3845300, at *4-5 (6th Cir. Dec. 9, 2025).

In light of the foregoing, the Court will grant the defendants' motion to dismiss, and dismiss the complaint.

Accordingly, it is **ORDERED** as follows:

1. The motion to dismiss, [R. 20], is **GRANTED**.

2. The complaint, [R. 1], is **DISMISSED**.

3. This matter is **STRICKEN** from the docket.

Entered: September 2, 2026.

**Signed By:**
***Karen K. Caldwell*** KKC
**United States District Judge**